USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/11/13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ X

NAUTILUS NEUROSCIENCES, INC.,

            **Plaintiff,**

      **- against -**

JAMES FARES,

            **Defendant.**

------------------------------------------------------------------ X

                **OPINION AND**
                **___ORDER___**

             **13 Civ. 1078 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        Nautilus Neurosciences, Inc. ("Nautilus") filed the instant action against James Fares for breach of contract and unjust enrichment, seeking payment under a Promissory Note signed January 15, 2010 (the "Promissory Note" or the "Note"), as well as related attorneys' fees.[1]  In his Answer, Fares asserts seven affirmative defenses and a counterclaim for breach of contract based upon Nautilus's issuance of Series C stock (the "Issuance") in May, 2012.[2]  Fares claims

---

[1]     *See* Complaint.

[2]     *See* First Amended Answer and Original Counterclaim.

that the Issuance destroyed the value of the Series A shares he received as consideration for the Promissory Note, thereby violating the implied covenant of good faith and fair dealing.[3]  Nautilus now moves for summary judgment on its claims and for dismissal of Fares's counterclaim.  For the following reasons, Nautilus's motion is GRANTED in full.

## II.   BACKGROUND

### A.   The Promissory Note and Related Agreements

Fares is a former executive and current shareholder of Nautilus.[4]  On January 15, 2010, Fares and Nautilus executed the Promissory Note, which provides that Fares will pay Nautilus $75,000 plus interest by December 31, 2012.[5] The Promissory Note references a separate Pledge Agreement executed by the parties "[t]o secure the payment obligations of Fares under this Note."[6]  The Pledge Agreement states that Fares "is using the proceeds of the [Promissory Note] loan to purchase seventy five (75) shares of Series A Preferred Stock" in Nautilus, and

---

[3]      See id. at 5–6.

[4]      See Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ("Pl. 56.1") ¶ 1.

[5]      See id ¶ 2.

[6]      Promissory Note, Ex. A to 8/9/13 Declaration of William R. Maichle ("Maichle Decl.") ¶ 4.

creates a lien on those shares as collateral for Fares's debt obligation under the Note.[7]

It is undisputed that Fares received the seventy-five shares, but failed to pay Nautilus the balance on the Promissory Note by December 31, 2012.[8]  The Note defines several potential Events of Default, including Fares's failure to pay "any accrued interest or other amounts due under this Note on the date the same becomes due and payable."[9]  Under the terms of the Note, "Fares promises to pay all costs of collection, including reasonable attorneys' fees, incurred by Nautilus upon and following any Event of Default under this Note."[10]

On January 1, 2010, Fares signed a Joinder Agreement providing that the Series A shares would be subject to the Nautilus Neurosciences, Inc. Stockholders Agreement ("Stockholders Agreement").[11]  The Stockholders Agreement grants existing shareholders the right to purchase new share offerings in proportion to their ownership stake in the company, but places no restrictions on

---

[7]     Pledge Agreement, Ex. B to Maichle Decl., preamble and ¶ 1.

[8]     See Pl. 56.1 ¶ 9; Defendant's Response to Rule 56.1 Statement of Undisputed Facts ("Def. 56.1") ¶ 4.

[9]     Promissory Note ¶ 5(a).

[10]     Id. ¶ 7.

[11]     See Pl. 56.1 ¶ 6.

the price at which new shares may be offered.[12]

## B.    The Separation Agreement and Release

In 2011, Fares left Nautilus but remained a shareholder.[13]  On April 21, 2011, in exchange for a severance payment of $375,000, Fares executed a release of future claims against Nautilus.[14]  Under the terms of the release, Fares "fully and unconditionally[] acquits, releases and forever discharges [Nautilus] . . . with respect to any and all claims, demands, actions and causes of action . . . with respect to any other matter whatsoever. . . including . . . statutory, contractual, quasi-contractual, tort and public policy claims. . . ."[15]

## C.    The Series C Issuance

By letter dated May 11, 2012, Nautilus notified Fares of its intention to issue new Series C shares, and advised him of his right to purchase the shares in proportion to his ownership stake in the company.[16]  Fares declined to participate

---

[12]    *See* Stockholders Agreement, Ex. D to Maichle Decl. ¶ 8.1.  A new Stockholders Agreement was subsequently issued on March 31, 2010.  *See* Nautilus Neurosciences, Inc. Amended and Restated Stockholders Agreement, Ex. H to Maichle Decl.

[13]    *See* Pl. 56.1 ¶ 13.

[14]    *See id.* ¶ 14.

[15]    Separation Agreement and Release, Ex. F to Maichle Decl. ¶ 6.

[16]    *See* Pl. 56.1 ¶¶ 19–22.

4

in the Series C Offering.[17]   The Series C shares ranked senior to the Series A shares in certain respects, including priority of payment in the event of corporate restructuring.[18]

## D.    The Delaware Action

On November 2, 2012, Fares commenced a lawsuit in the Delaware District Court against Nautilus directors, officers, and shareholders for breach of fiduciary duty in connection with the Issuance.  Nautilus was named as a defendant in the original Complaint, but was omitted from the Amended Complaint.[19]

On April 26, 2013, Fares moved to stay the instant action pending the outcome of the Delaware lawsuit.  This Court denied Fares's motion, noting that:

> The alleged breach of fiduciary duties by the Delaware defendants does not negate consideration or otherwise serve to invalidate the Note. The consideration contemplated in the Note is the loan needed to purchase the Series A shares. . . . A breach of the Delaware defendants' fiduciary duties in 2012 has no bearing on the consideration from Nautilus to Fares in exchange for the Note

---

[17]    *See id.* ¶ 24.

[18]    *See* Third Amended and Restated Certificate of Incorporation of Nautilus Neurosciences, Inc. ("Certification of Incorporation"), Ex. B.2 to 8/30/13 Declaration of James Fares ("Fares Decl.") at 2.

[19]    *See* Pl. 56.1 ¶ 17.

in 2010.[20]

On June 19, 2013, the Delaware District Court dismissed Fares's lawsuit for failing to adequately plead demand futility,[21] after which Fares filed a motion for reconsideration as well as a notice of appeal to the Third Circuit.[22]  On August 15, 2013, the Delaware District Court granted Fares's motion for reconsideration with respect to the question of demand futility, but declined to address the other arguments raised in the motion to dismiss pending resolution of the appeal.[23]

## III.  STANDARD OF REVIEW

### A.  Summary Judgment

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact

---

[20]   *Nautilus Neurosciences, Inc. v. Fares*, No. 13 Civ. 1078, 2013 WL 3009488, at *2 (S.D.N.Y. June 14, 2013).

[21]   *See Fares v. Lankau,* No. Civ. 12-1381, 2013 WL 3062170 (D. Del. June 19, 2013), *reconsideration granted,* No. Civ. 12-1381, 2013 WL 4449969 (D. Del. Aug. 15, 2013).

[22]   *See* Notice of Appeal, Ex. F to 8/9/13 Declaration of Jonathan K. Cooperman ("Cooperman Decl.").

[23]   *See Fares v. Lankau,* No. Civ. 12-1381, 2013 WL 4449969 (D. Del. Aug. 15, 2013).

and . . . the movant is entitled to judgment as a matter of law.'"[24]  "A genuine

dispute exists if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."[25]

"The moving party bears the burden of establishing the absence of any

genuine issue of material fact."[26]  To defeat a motion for summary judgment, the

non-moving party must show more than "some metaphysical doubt as to the

material facts,"[27] and "'may not rely on conclusory allegations or unsubstantiated

speculation.'"[28]

In deciding a motion for summary judgment, "[t]he role of the court is

not to resolve disputed issues of fact but to assess whether there are any factual

---

[24]     *Rivera v. Rochester Genesee Reg'l Transp. Auth.,* 702 F.3d 685, 693
(2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[25]     *Finn v. New York State Office of Mental Health–Rockland Psychiatric
Ctr.,* 489 Fed. App'x 513, 514 (2d Cir. 2012) (quotation marks omitted).

[26]     *Zalaski v. City of Bridgeport Police Dep't,* 613 F.3d 336, 340 (2d Cir.
2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[27]     *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 101 (2d Cir. 2010)
(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586
(1986)).

[28]     *Robinson v. Allstate Ins. Co.,* 508 Fed. App'x 7, 9 (2d Cir. 2013)
(quoting *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)).

issues to be tried."[29]  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[30]

### B.    Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), the court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."[31]  The court evaluates the complaint under the "two-pronged approach" set forth in *Ashcroft v. Iqbal*.[32]  *First*, a court may identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[33]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[34]  *Second*, "[w]hen there are well-pleaded factual

---

[29]    *Cuff ex rel. B.C. v. Valley Cent. School Dist.,* 677 F.3d 109, 119 (2d Cir. 2012) (quotation marks and citations omitted).

[30]    *Redd v. New York Div. of Parole,* 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[31]    *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013) (citing *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591–92 (2d Cir. 2007)).

[32]    556 U.S. 662, 679 (2009).

[33]    *Id*.

[34]    *Id.* at 678.

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[35]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36] Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[37]

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider "only the complaint, . . . any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily."[38]  Allegations in the complaint that are "contradicted by more specific allegations or documentary evidence" are not entitled to a presumption of truthfulness.[39]

## IV.   APPLICABLE LAW

---

[35]     *Taveras v. UBS AG*, 513 Fed. App'x 19, 22 (2d Cir. 2013) (citing *Iqbal*, 556 U.S. at 679).

[36]     *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[37]     *Id.*

[38]     *Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012) (quotation marks and citations omitted).

[39]     *Kirkendall v. Halliburton, Inc.,* 707 F.3d 173, 175 n.1 (2d Cir. 2013) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

### A.      The Covenant of Good Faith and Fair Dealing

Under New York law, every contract contains an implied promise that "neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract."[40] However, the covenant only applies "where an implied promise is so interwoven into the contract as to be necessary for effectuation of the purposes of the contract."[41]  In other words, a breach of the covenant is "merely a breach of the underlying contract," and "cannot be used to create new contractual rights between the parties."[42]  Moreover, "[t]he implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract."[43]

### B.      Leave to Amend

Whether to permit a party to amend its complaint is a matter

---

[40]      *M/A-COM Sec. Corp. v. Galesi,* 904 F.2d 134, 136 (2d Cir. 1990). *Accord Thyroff v. Nationwide Mut. Ins. Co.,* 460 F.3d 400, 407 (2d Cir. 2006); *511 West 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 153 (2002).

[41]      *Thyroff,* 460 F.3d at 407 (internal quotations and citations omitted).

[42]      *Cohen v. Elephant Wireless, Inc.,* No. 03 Civ. 4058, 2004 WL 1872421, at *11 (S.D.N.Y. Aug. 19, 2004) (quotation marks and citations omitted).

[43]      *Galesi,* 904 F.2d at 136 (internal quotations and citations omitted).

committed to a court's "sound discretion."[44]   Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires."[45]   Leave to amend should be denied, however, where the proposed amendment would be futile.[46]

## V.   DISCUSSION

### A.   Nautilus Is Entitled to Summary Judgment on Its Breach of Contract Claim

The Promissory Note embodies an agreement by Fares to pay $75,000 plus interest on or before December 31, 2012 in exchange for seventy-five shares of Series A Nautilus stock.[47]   It is uncontested that Fares received the seventy-five shares, but failed to make the payment due on or before December 31, 2012.[48] However, Fares raises seven affirmative defenses that he claims excuse his non-performance.[49]   For the reasons that follow, Fares has not sufficiently pled any of

---

[44]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[45]     Fed. R. Civ. P. 15(a).

[46]     *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87–88 (2d Cir. 2002).

[47]     *See* Def. 56.1 ¶ 4.

[48]     *See id.*; Pl. 56.1 ¶ 9.

[49]     The Promissory Note and the Pledge Agreement are both governed by New York law.  *See* Promissory Note ¶ 8(k); Pledge Agreement ¶ 8(i)-(j).

these defenses as a matter of law, and Nautilus is entitled to summary judgment on its claim for breach of contract.[50]

### 1.    Offset

*First,* Fares claims an offset of any obligation under the Promissory Note based on the damages he allegedly suffered from the Issuance.  However, Fares would be entitled to an offset only if he could establish a valid claim against Nautilus for damages.  Because Fares has failed to state a valid counterclaim against Nautilus based upon the Series C offering, as discussed below, he is not entitled to any offset of the amount owed under the Promissory Note.

### 2.    Estoppel

*Second,* Fares argues that Nautilus agreed in the Pledge Agreement to take reasonable custodial care of the collateral, namely the Class A shares, but then "engaged in a course of conduct designed to damage [that] collateral."[51]  Given this "misrepresentation," Fares argues, Nautilus should be estopped from enforcing the Promissory Note.  Under New York law, the defense of equitable estoppel requires

---

[50]    Because each of these defenses is invalid as a matter of law, it is not necessary to consider whether the Separation Agreement bars Fares's affirmative defenses.  Similarly, Nautilus's argument that it is a holder in due course, and thus immune from certain defenses, need not be addressed.

[51]    Defendant/Counter-Plaintiff Jim Fares' Response to Plaintiff's Motion for Summary Judgment and to Dismiss Defendant's Counterclaim and Affirmative Defenses ("Def. Mem.") at 18.

proof of the following elements: "(1) an act constituting a concealment of facts or a

false misrepresentation; (2) an intention or expectation that such acts will be relied

upon; (3) actual or constructive knowledge of the true facts by the wrongdoers; (4)

reliance upon the misrepresentations which causes the innocent part[y] to change

its position to its substantial detriment."[52]  Fares does not allege that Nautilus made

any false misrepresentation in connection with the Promissory Note or Pledge

Agreement, as Fares does not allege that Nautilus planned the Issuance at the time

those agreements were executed.  Because Fares does not plead a false

misrepresentation, the doctrine of equitable estoppel is inapposite.

### 3.    Unclean Hands

*Third,* Fares argues that Nautilus's claims are barred by the equitable

doctrine of "unclean hands."  As Nautilus points out, the doctrine is not a defense

to Nautilus's breach of contract claim for money damages.  As an equitable

remedy, it is a potential defense only against Nautilus's claim for unjust

enrichment.[53]  Even as to that claim, however, the argument fails.  Under New

---

[52]    *Jobim v. Songs of Universal, Inc.,* 732 F. Supp. 2d 407, 419 (S.D.N.Y. 2010) (quotation marks and citations omitted).

[53]    *See, e.g., Kwon v. Yun,* 606 F. Supp. 2d 344, 368 n.23 (S.D.N.Y. 2009) (noting that "unclean hands is an equitable defense that does not apply to actions at law that seek money damages" (citation omitted)); *Wells Fargo Bank v. Hodge,* 939 N.Y.S.2d 98, 100 (2d Dep't 2012) ("The doctrine of unclean hands is used only to bar the grant of equitable relief . . .").

York law, application of the "unclean hands" doctrine is appropriate only where the inequitable conduct is "directly related to the subject matter in litigation"[54] such that the plaintiff's claim is "founded in illegality or immorality."[55]

   Here, the allegedly inequitable conduct occurred years after the execution of the Promissory Note and is not directly related to Nautilus's claims. Moreover, Fares has not identified any wrongdoing in the Issuance aside from the allegedly negative impact on his Series A shares. Fares certainly has not pled facts suggesting that Nautilus's claim for payment of the Promissory Note is founded in illegality or immorality. Thus, the facts in this case do not support an application of the "unclean hands" doctrine.

### 4. Unilateral and/or Mutual Mistake

   *Fourth,* Fares argues that he is excused from paying the amount due under the Promissory Note based on unilateral or mutual mistake. The specific "mistake" alleged is that "Nautilus believes it was justified in issuing a dilutive

---

   [54] *National Distillers & Chem. Corp. v. Seyopp Corp.*, 17 N.Y.2d 12, 15–16 (1966). *Accord Seagirt Realty Corp. v. Chazanof,* 13 N.Y.2d 282, 287 (1963) (holding that "unclean hands" doctrine only applies "where the plaintiff has dealt unjustly in the very transaction of which he complains").

   [55] *O'Neill v. Pinkowski,* 937 N.Y.S.2d 740, 742 (3d Dep't 2012) (citing *Seagirt,* 13 N.Y.2d at 285).

share offering, while Mr. Fares believes it was not allowed."[56]

To justify the remedy of reformation or rescission under New York law, a mutual mistake "must exist at the time the contract is entered into" and must be "so material that . . . it goes to the foundation of the agreement."[57]  A unilateral mistake must additionally be coupled with fraud or deception.[58]

Fares makes no allegation that the parties considered or discussed the Issuance at the time the Note was executed.  The fact that they now disagree about the correct interpretation of the Note does not mean that they were mistaken about a fundamental premise of the agreement at the time it was executed.  Furthermore, Fares has never alleged that Nautilus misrepresented the permissibility of the Issuance.  Thus, Fares's defense of mutual/unilateral mistake is without merit.

### 5.   Nonoccurrence of Conditions Precedent

*Fifth,* Fares argues that he is excused from non-payment because Nautilus failed to comply with a condition precedent, namely the obligation to exercise reasonable care over the Class A shares.  Under New York law, a condition precedent is "an act or event . . . [that] must occur before a duty to

---

[56]    Def. Mem. at 19.

[57]    *Simkin v. Blank,* 19 N.Y.3d 46, 52 (2012).

[58]    *See Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc.,* 322 F. Supp. 2d 482, 498 (S.D.N.Y. 2004).

perform a promise in the agreement arises."[59]  Use of terms such as "if," "unless"

and "until" indicate the existence of an express condition.[60]  Nothing in the

language of the Promissory Note suggests that Fares's duty to pay is conditioned

on Nautilus's preservation of the value of the Class A shares.  Because the Note

contains no condition precedent to payment, this defense also fails.

### 6.    Failure of Consideration

*Sixth,* Fares argues that the Promissory Note is invalid due to a lack of

consideration, as the Issuance rendered the Series A shares "worthless."[61]

However, under New York law, sufficient consideration exists as long as there is

"either a benefit to the promisor or a detriment to the promisee."[62]  Courts "should

not scrutinize 'the adequacy of consideration' absent fraud or unconscionability, as

'[i]t is enough that something of real value in the eye of the law was exchanged.'"[63]

Fares does not dispute that the seventy-five Series A shares had substantial value at

---

[59]    *MHR Capital Partners LP v. Presstek, Inc.,* 12 N.Y.3d 640, 645 (2009) (quotation marks and citations omitted).

[60]    *Id.*

[61]    Def. Mem. at 17.

[62]    *Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 464 (1982).

[63]    *Capital Constr. Mgmt. of N.Y., LLC v. Zaga,* No. 11 Civ. 8112, 2012 WL 2188339, at *4 (S.D.N.Y. June 14, 2012) (quoting *Apfel v. Prudential–Bache Sec.*, 81 N.Y.2d 470, 475 (1993)).

the time he signed the Promissory Note and received the shares.  The fact that the

shares later lost value does not render the original contract void for lack of

consideration.

7.      **Breach of Contract**

Finally, Fares argues that his failure to pay the amount due under the

Promissory Note is excused by Nautilus's prior material breach of the agreement.

*First,* Fares argues that Nautilus failed to take "reasonable custodial care" of the

Series A shares as required by the Pledge Agreement, because the Series C

issuance significantly decreased their value.[64]  However, the "reasonable custodial

care" provision does not charge Nautilus with maintaining the value of the Series

A shares.  The provision more likely refers to Nautilus's duty not to lose any

"books, records, and other property relating to the Securities."[65]  Both parties to the

transaction were well aware that the shares could fluctuate in value, and Fares

accepted the terms of the Promissory Note without any guarantees as to the value

of the shares or the price of future stock offerings.  Thus, the Issuance cannot

---

[64]      Pledge Agreement ¶ 5(b) ("[Nautilus] shall have no duty to protect,
preserve, or endorse rights against the Collateral other than the duty to exercise
reasonable custodial care of any such Collateral in its possession, it being
understood that [Nautilus] shall have no responsibility for taking any necessary
steps to preserve rights against any parties with respect to the Collateral.").

[65]      *Id.* ¶ 1.

17

reasonably be interpreted as a breach of the "custodial care" provision of the Pledge Agreement.

Second, Fares argues that the Series C issuance constituted a "taking" of the Series A shares prior to Fares's default, in violation of the Pledge Agreement.[66]  Although the shares may have declined in value, they were still legally in Fares's name, and Fares has not alleged that Nautilus interfered with his right to receive distributions or other benefits from the shares during that time. The fact that Nautilus issued new stock that lowered the value of the Series A shares does not constitute "taking" the shares under the Pledge Agreement.

Third, Fares argues that the Issuance constituted a breach of the implied covenant of good faith and fair dealing under New York law.  However, the covenant only applies to implied promises necessary to effectuate the parties' intentions and purposes in entering the contract.[67]  Nothing in the Promissory Note or related agreements indicates that Nautilus implicitly agreed not to issue new shares that could affect the value of the Series A shares.  In fact, the Stockholders Agreement expressly contemplates future stock issuances at prices set by

---

[66]    The Pledge Agreement provides that upon an Event of Default, Nautilus will be entitled to "all dividends, distributions, and payments of any nature with respect to the Collateral."  Id. ¶ 3.

[67]    See Thyroff, 460 F.3d at 407.

Nautilus.[68]

Moreover, the covenant applies to actions taken deliberately to sabotage the other party's benefits under the contract, not actions that incidentally diminish them.[69] It is highly unlikely that Nautilus issued the Series C shares with the sole purpose of sabotaging Fares's investments, and Fares has pled no facts to support that theory.[70] There are many legitimate business reasons that Nautilus could have chosen to issue new stock, including the desire to raise revenue. Moreover, the Issuance occurred several years after Fares acquired the Series A shares, which undermines the likelihood of a direct connection. For the foregoing reasons, Fares has not plausibly alleged that Nautilus breached the covenant of good faith and fair dealing.[71]

### B.     Fares Has Not Stated a Plausible Counterclaim for Breach of Contract

Fares's counterclaim for breach of contract is identical to his affirmative defense based on prior material breach. For the reasons already

---

[68]     *See* Stockholders Agreement ¶ 8.1.

[69]     *See Galesi,* 904 F.2d at 136.

[70]     *See Iqbal*, 556 U.S. at 679 (noting that "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth").

[71]     *See id.* at 678 (stating that a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

discussed, Fares has not stated a plausible counterclaim for breach of contract sufficient to withstand Nautilus's motion to dismiss.[72]

### C.   Fares Is Not Entitled to Further Discovery

Fares argues that summary judgment is inappropriate at this juncture because he has been deprived of the opportunity to conduct relevant discovery. Specifically, Fares seeks discovery on whether Nautilus "dealt with" Fares within the meaning of New York Uniform Commercial Code § 3-305(2), which would subject Nautilus to Fares's affirmative defenses despite the company's status as a holder in due course.  Fares also seeks discovery on whether the Series C shares were issued at an artificially low price.[73]

Neither of these issues is germane to the summary judgment motion. Fares's affirmative defenses are not valid as a matter of law, regardless of whether Nautilus is a holder in due course.  Moreover, even if the Series C shares were issued at an artificially low price, that would not constitute a breach of the implied covenant of good faith and fair dealing on the Promissory Note.  Fares has not

---

[72]   Nautilus also argues that Fares released all contractual claims against Nautilus through the Separation Agreement and Release, which bars his counterclaim for breach of contract.  Because Fares has failed to state a claim for relief as a matter of law, the validity and applicability of the release need not be considered at this time.

[73]   *See* Def. Mem. at 23.

20

identified any subjects on which further discovery could alter the outcome of Nautilus's motion.  Therefore, his request for further discovery is denied.

### D.    Leave to Amend

Fares's counterclaim for breach of contract is based entirely on the Issuance.  However, nothing in the terms of the Promissory Note or other related agreements restricts Nautilus's ability to issue subsequent stock offerings at whatever price it deems appropriate.  Moreover, any claim that Nautilus issued the Series C shares solely to sabotage Fares is highly implausible.  Therefore, Fares can plead no plausible set of facts constituting a breach of contract.  Accordingly, leave to amend is denied as futile.

### E.    Nautilus Is Entitled to Reasonable Attorneys' Fees

Under the terms of the Promissory Note, "Fares promises to pay all costs of collection, including reasonable attorneys' fees, incurred by Nautilus upon and following any Event of Default under this Note. . ."[74]  An Event of Default has unquestionably occurred because Fares failed to pay "accrued interest or other amounts due under [the] Note on the date the same [became] due and payable."[75] Therefore, Fares must pay Nautilus's reasonable attorneys' fees incurred in this

---

[74]    Promissory Note ¶ 7.

[75]    *Id.* ¶  5(a).

action.

## VI.   CONCLUSION

For the foregoing reasons, Nautilus's motion is GRANTED in full. Fares is liable for the full amount due under the Promissory Note, namely $75,000 plus interest, as well as reasonable attorneys' fees.  Nautilus is directed to submit a request for reasonable attorneys' fees with supporting documentation within thirty (30) days.  The Clerk of the Court is directed to close this motion [Docket Entry No. 32].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        December 11, 2013
              New York, New York

22

**- Appearances -**

**For Plaintiff:**

Jonathan Keith Cooperman, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
(212) 808-7534
Fax: (212) 808-7897

**For Defendant:**

Eric M. Eusanio, Esq.
Frenkel Lambert Weiss Weisman & Gordon LLP
One Whitehall Street, 20th Floor
New York, NY 10004
(212) 344-3100
Fax: (212) 422-4047

Peyton J. Healey, Esq.
Powers Taylor LLP
8150 North Central Expressway, Suite 1575
Dallas, TX 75206
(214) 239-8900
Fax: (214) 239-8901