UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

NAUTILUS NEUROSCIENCES, INC.,

     Plaintiff,

  - against -

JAMES L. FARES,

     Defendant.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/16/14

**OPINION AND ORDER**

**13 Civ. 1078 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

   Nautilus Neurosciences, Inc. ("Nautilus") brought this action to recover money owed by defendant James L. Fares ("Fares") under a Promissory Note dated January 15, 2010.  In an Opinion and Order dated December 11, 2013, I granted Nautilus's motion for summary judgment and held Fares liable for the full amount due under the Promissory Note, namely $75,000, plus interest and reasonable attorneys' fees.  I directed Nautilus to submit a request for reasonable attorneys' fees with supporting documentation within thirty (30) days.  On January 10, 2014, Nautilus submitted a motion for attorneys' fees and disbursements in the amount of $121,748.04.  For the following reasons, Nautilus's motion for attorneys' fees is GRANTED.

## II. LEGAL STANDARD

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."[1] "'The district court retains discretion to determine . . . what constitutes a reasonable fee.'"[2] In determining the amount of a fee award, courts must calculate the "lodestar" figure — "the product of a reasonable hourly rate and the reasonable number of hours required by the case" — which represents the "presumptively reasonable fee."[3] "In reducing the 'lodestar' amount, the court may exclude the excessive and unreasonable hours from its calculation by making an across the board reduction, or percentage cut, in the [number] of hours."[4]

---

[1]     *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

[2]     *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) (ellipsis in original)).

[3]     *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010) ("[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.") (emphasis in original). *Accord Millea*, 658 F.3d at 166 ("Both this Court and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'") (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F. 3d 182, 183 (2d Cir. 2008)).

[4]     *T.S. Haulers, Inc. v. Cardinale*, No. 09 Civ. 0451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (citing *Green v. City of New York*, 403 Fed. App'x 626, 630 (2d Cir. 2010) (stating that district courts are authorized "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee

A reasonable rate is generally the "prevailing market rate[] for counsel of similar experience and skill to the fee applicant's counsel."[5] "The reasonable hourly rate for such calculation is determined by the rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."[6] In making this determination, a court may consider "rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district."[7] The burden is on the movant to show "by satisfactory evidence — in addition to the attorney's own affidavits — that the requested hourly rates are the prevailing market rates."[8]

In calculating the reasonable number of hours expended "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise

---

application'") (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (internal quotation marks and citation omitted)).

[5]    *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005). *Accord Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853, 2011 WL 1002439, at *4 (S.D.N.Y. Mar. 16, 2011) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (instructing courts to look at market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation")).

[6]    *Streck v. Board of Educ. of the East Greenbush Cent. Sch. Dist.*, 408 Fed. App'x 411, 416 (2d Cir. 2010).

[7]    *Farbotko*, 433 F.3d at 209.

[8]    *Id.*

unnecessary.'"[9]  In doing so, the court "'may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'"[10]  This analysis "turns not on what appears necessary in hindsight, but on whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."[11]

Finally, attorneys' fees awards "'include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"[12] "Litigants may recover photocopying costs, 'but . . . must make clear what documents were copied, how many copies were made, the cost per page charged for copying, and why the copies were necessary.'"[13]  Legal research expenses "'are

---

[9]      *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).

[10]      *Finch v. New York State Office of Children & Family Servs.*, 861 F. Supp. 2d 145, 151 (S.D.N.Y. 2012) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)).

[11]      *Amaprop Ltd.*, 2011 WL 1002439, at *7 (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

[12]      *Id.*, at *9 (quoting *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, Nos. 03 Civ. 4148, 04 Civ. 5732, 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2008)).  *Accord Merck Eprova AG v. Brookstone Pharm., LLC*, No. 09 Civ. 9684, 2013 WL 3146768 (S.D.N.Y. Jun. 10, 2013).

[13]      *Amaprop Ltd.*, 2011 WL 1002439, at *9 (quoting *Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, No. 05 Civ. 6757, 2009 WL 466136, at *8 (S.D.N.Y. Feb. 25, 2009)).

-4-

compensable on a fee application if the firm regularly bills its clients for them'"
and if they are adequately documented.[14]

## III.   DISCUSSION

Nautilus argues that "the hourly rate and number of hours Nautilus's
attorneys spent on this case, primarily responding to Fares's motion to stay,
defenses, and counterclaim are reasonable, . . . and therefore, Nautilus should be
awarded its entire amount of attorneys' fees and disbursements."[15]  Fares contests
the reasonableness of both the hourly rate and the hours expended, and asks the
Court to reduce the requested fee award.

### A.   Hourly Rates

Nautilus retained attorneys from the New York office of Kelley Drye
& Warren LLP.  In 2013, the firm's hourly rates for attorneys in its New York
office ranged from $285 for junior associates to $855 for senior partners.[16]  The
customary hourly rates of the two attorneys most involved with the case —
Jonathan K. Cooperman, the lead litigator, and Jessica Klarfeld, a litigation

---

[14]    *Id.*

[15]    Memorandum of Law in Support of Plaintiff Nautilus Neurosciences,
Inc.'s Motion for Attorneys' Fees and Disbursements ("Pl. Mem.") at 2.

[16]    *See id.* at 3; *see also* Declaration of Laurence May in Support of
Plaintiff Nautilus Neurosciences, Inc.'s Motion for Attorneys' Fees and
Disbursements ("May Decl.") ¶ 6.

associate — were $670 and $375, respectively.[17]  In this litigation, Kelley Drye

also gave Nautilus a ten percent discount.[18]  In support of the motion, Nautilus's

counsel submitted invoices for services it rendered in defending the underlying

action for non-payment of the Promissory Note.[19]

       After graduating from Williams College in 1982 and Syracuse

University College of Law in 1985, Cooperman was admitted to the New York Bar

in 1986 and to the Bar of this Court a year later.  He began working at Kelley Drye

in September 1985 and has been a member of the firm since January 1996.  By his

own account, Cooperman has "extensive experience handling commercial

litigation" in this and other courts.[20]  Jessica Klarfeld graduated from Duke

University in 2006 and received her J.D. from Georgetown in 2011.  She was a

---

[17]    *See* Pl. Mem. at 3; *see also* Declaration of Jonathan K. Cooperman in Support of Plaintiff Nautilus Neurosciences, Inc.'s Motion for Attorneys' Fees and Disbursements ("Cooperman Decl.") ¶¶ 8, 10.

[18]    *See* Pl. Mem. at 3; *see also* Cooperman Decl. ¶¶ 8, 10 and May Decl. ¶ 6.

[19]    All invoices are attached as exhibits to Cooperman's Declaration and summarized at page 8 of Plaintiff's Memorandum.

[20]    *See* Cooperman Decl. ¶ 5.

summer associate with Kelley Drye after her second year of law school and has
been an associate at the firm since September 2011.[21]

Laurence May, a partner in the New York office of Cole, Schotz,
Meisel, Forman & Leonard,[22] submitted a declaration in support of Nautilus's
motion. May attests that "the hourly rates charged to Nautilus are reasonable and
commensurate with the rates charged by attorneys in similarly-sized firms and with
similar skill and experience level at firms in New York City."[23]  In fact, May
believes that "the rate charged for Mr. Cooperman is on the lower end of the
spectrum for a New York commercial litigator with his level of experience."[24]

Nautilus provides examples of similar and higher fees approved
recently by a court in this District, including $865 for a senior partner who

---

[21]   *Id.* ¶ 9.

[22]   According to his Declaration, May has practiced law continuously for
the past thirty-six years and is currently a senior member of Cole Schotz's
Bankruptcy Department.  He graduated from New York University School of Law,
where he was a member of one of its law reviews. *See* May Decl. ¶¶ 1–3.

[23]   *Id.* ¶ 7. May, an active bankruptcy attorney, has reviewed the hourly
rates charged by many New York City law firms, and particularly those who
practice in the area of commercial litigation. *See id.* ¶ 4. May has also been
involved in organizational meetings for Creditors' Committees where New York
law firms make presentations and regularly disclose the hourly rates of their
attorneys. *See id.* ¶ 5.

[24]   *Id.* ¶ 7.

graduated from law school in 1976, $700 for a partner who graduated in 1994, $445 for an associate with two years of experience at the time the action was filed, and $355 for a law clerk awaiting admission to the bar.[25]  Cooperman's rate for work performed in 2013 was lower than the above billing rates from 2010 for partners with similar skill, experience, and reputation.  Klarfeld's rate was significantly lower than that of the associate in *Amaprop*, who had a comparable level of experience, and only slightly higher than the law clerk awaiting admission to the bar.[26]

Fares argues that these hourly rates are excessive and in particular that Cooperman's rate should be reduced from $603 to $425.[27]  In support of this claim, Fares cites cases from other districts that represent prevailing rates in other

---

[25]    *Amaprop Ltd.*, 2011 WL 1002439, at *5.  The law firm of Orrick, Herrington & Sutcliffe provided a twelve percent discount on these rates. *Amaprop* gives several other examples in which courts have approved hourly rates of $885 for a partner at O'Melveny & Myers admitted to the bar in 1982; $845 for a Davis Polk & Wardwell partner admitted to the bar in 1999; and $495 and $460 for associates at Skadden, Arps, Slate, Meagher & Flom with two years' experience.  *Id.*  Nautilus also cites a 2009 case in which the court reduced the fees requested but still granted a senior partner at Herrick, Feinstein LLP a rate of $600 per hour.  *See Edmonds v. Seavey*, No. 08 Civ. 5646, 2009 WL 1598794, at *3 (S.D.N.Y. Jun. 5, 2009).

[26]    *See* Pl. Mem. at 4.

[27]    *See* Defendant/Counter-Plaintiff Jim Fares' Response to Plaintiff's Application for Fees ("Def. Mem.") at 2–3.

markets,[28] or older cases from this District involving discrimination or civil rights claims rather than commercial disputes.[29]  Unlike fee awards under civil rights and employment discrimination statutes, which have specific standards for fee awards, Fares freely entered into a Promissory Note with Nautilus in which he agreed to pay attorneys' fees.[30]  There is no question that Nautilus acted reasonably in using experienced commercial attorneys in this commercial dispute.[31]

In sum, considering the time and labor required to represent Nautilus, the experience and qualifications of the attorneys, and the prevailing rates in this District, the requested hourly rates for Cooperman and Klarfeld of $603 and $337.50, respectively, are reasonable.

### B.    Hours Expended

---

[28]    *See S.E.C. v. Utsick*, No. 06 Civ. 20975, 2009 WL 1606511 (S.D. Fla. Apr. 29, 2009) (holding that a rate of $500 per hour was excessive); *Perrin v. Goodrich*, No. 08 Civ. 00595, 2012 WL 1698296, at *6 (C.D. Cal. May 14, 2012) (reducing hourly rate from $600 to $500).

[29]    For example, the most recent case cited by defendant is an employment discrimination case from 2002 awarding fees under a provision of the Family and Medical Leave Act. *See Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc.*, No. 00 Civ. 5207, 2002 WL 1059117 (S.D.N.Y. May 28, 2002) (approving a rate of $345 for a partner with twelve years' experience). *See also* Reply Memorandum of Law in Further Support of Plaintiff Nautilus Neurosciences, Inc.'s Motion for Attorneys' Fees and Disbursements ("Pl. Reply") at 1–2.

[30]    *See* Pl. Reply at 2–3.

[31]    *See id.* at 3.

Nautilus also argues that the amount of time its attorneys spent on this matter is reasonable.[32]  Over a nine-month period, Cooperman spent 81.9 hours on the case, while Klarfeld spent 162.6 hours.[33]  According to Nautilus, not only was the amount of time spent reasonable in light of the "research and drafting required for the various motions, oppositions, and papers," but Nautilus also hoped to avoid the majority of fees eventually incurred by filing a Motion for Summary Judgment in Lieu of Complaint because "it was the most efficient manner to litigate a straightforward action for non-payment of a promissory note."[34]  In response, Fares removed the action to this Court, raised the defense of improper service, brought a motion to stay this action pending the resolution of a related Delaware action, requested extensive discovery that was unrelated to this action, and raised several defenses and a counterclaim that were either withdrawn or dismissed.[35]  Nautilus incurred over eighty percent of the legal fees it seeks to recover addressing Fares's

---

[32]    *See* Pl. Mem. at 5.

[33]    Four other attorneys and various clerks also spent a total of 25.7 hours on the matter. *See id. See also* Cooperman Decl. Exs. D, G–I, L–N.

[34]    Pl. Mem. at 6.

[35]    *See id*; *see also* Cooperman Decl. ¶¶ 4, 15, 16, 18, 20.  Fares brought a related action against Nautilus's directors and officers in Delaware district court alleging that they breached their fiduciary duty to him as a shareholder by wrongfully diluting the value of stock.  That case is pending. *See Fares v. Lankau*, No. 12 Civ. 1381 (D. Del.).

unsuccessful motion to stay, as well as Fares's defenses and counterclaim.[36]

Therefore, Fares's own actions forced Nautilus to incur significant attorneys'

fees.[37]

Fares argues that the number of hours expended is "excessive and

unnecessary," especially when compared to the $75,000 value of the Promissory

Note.  Under New York law, "'it is rarely proper to award fees in an amount that

exceeds the amount involved in the litigation.'"[38]  However, "the proportionality

standard articulated in *[F.H.] Krear [& Co. v. Nineteen Named Trustees]* is not a

per se rule but rather one guidepost of many in determining the reasonableness of a

fee award."[39]  "'There is a strong presumption that the lodestar figure represents

the reasonable fee, even when that figure is disproportional to the amount of

damages obtained by the successful plaintiff.'"[40]  Fares provides no support for the

---

[36]     *See* Cooperman Decl. ¶ 4.

[37]     *See* Pl. Mem. at 6.

[38]     *Amerisource Corp. v. Rx USA Int'l Inc.*, No. 02 Civ. 2514, 2010 WL 2160017, at *13 (E.D.N.Y. May 26, 2010) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1250 (2d Cir. 1987)).

[39]     *Id.*

[40]     *Greene v. City of New York*, No. 12 Civ. 6427, 2013 WL 5797121 (S.D.N.Y. Oct. 25, 2013) (quoting *Anderson v. City of New York*, 132 F. Supp. 2d 239, 245 (S.D.N.Y. 2001)).  *Accord Kassim v. City of Schenectady*, 415 F. 3d 246, 252 (2d Cir. 2005) (noting that "[i]t is . . . difficult to generalize about the

-11-

claim that the fees charged were excessive for any particular task, and fails to respond to plaintiff's assertion that virtually all of the fees were incurred addressing defendant's arguably superfluous affirmative defenses and counterclaims. Fares specifically objects to the reimbursement of fees Nautilus incurred in preparing for a mediation that was cancelled due to a Court scheduling conflict, because that preparation time "provided no benefit to the client."[41] Because the mediation was required by the Court, a reasonable attorney would have been expected to prepare for it. Therefore, this argument has no merit.

### C.   Disbursements

Nautilus also seeks $5,514.39 in disbursements including court fees, administrative fees, photocopying, and legal research costs.[42] These amounts appear reasonable and are adequately documented. They are therefore included in Nautilus's fee award.

---

appropriate size of the fee in relation to the amount in controversy" because "an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel and of the court" and "the hours required to litigate even a simple matter can expand enormously"); and *Kahlil v. Original Old Homestead Restaurant, Inc.*, 657 F. Supp. 2d 470, 478 (S.D.N.Y. 2009) ("[T]he simple disproportion between a plaintiff's recovery and the fee applied for is not a proper basis for a reduction in an otherwise reasonable fee.").

[41]   Def. Mem. at 3.

[42]   *See* Pl. Mem. at 7.

## IV.   CONCLUSION

In sum, Nautilus seeks $116,233.65 in attorneys' fees and $5,514.39 in disbursements for a total award of $121,748.04.  Because the hourly rates of Nautilus's attorneys and the amount of time spent on this case were reasonable, Nautilus is entitled to the entire requested award of $121,748.04.  The Clerk of Court is directed to close Nautilus's motion for attorneys' fees and disbursements (Docket Entry #45).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
          April  16 , 2014

-13-

- Appearances -

**For Plaintiff:**

Jonathan Keith Cooperman, Esq.
Kelley Drye & Warren, LLP
101 Park Avenue
New York, NY 10178
(212) 808-7534

**For Defendant:**

Eric M. Eusanio, Esq.
Frenkel Lambert Weiss Weisman & Gordon, LLP
One Whitehall Street, 20th Floor
New York, NY 10004
(212) 344-3100

Peyton J Healey, Esq.
Powers Taylor, LLP
8150 North Central Expressway, Suite 1575
Dallas, TX 75206
(214) 239-8900